# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

REBECCA BEDNARZ,
Plaintiff

v.

KIND LLC,
Defendant

## COMPLAINT

Rebecca Bednarz ("Plaintiff"), proceeding pro se, alleges as follows:

## INTRODUCTION

1. This action arises from KIND LLC ("Defendant")'s unlawful treatment of Plaintiff after she reported harassment and retaliation and opposed conduct that a reasonable individual would consider to have violated workplace discrimination and harassment laws.
2. Plaintiff, a female employee, was subjected to gender and disability discrimination, harassment, sexual harassment, retaliation for reporting harassment, retaliation for reporting retaliation, and other adverse employment actions that created a hostile work environment and resulted in her constructive discharge and termination.
3. Defendant's actions harmed Plaintiff's professional standing, career trajectory, reputation, financial stability, and physical and emotional health.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims arising under federal employment discrimination laws, including Title VII of the Civil Rights Act of 1964, to the extent properly exhausted, as well as Plaintiff's claims arising under applicable New Jersey law.
5. Venue is proper in Morris County, New Jersey, as Plaintiff performed the majority of her work for Defendant remotely from Morris County while Defendant maintained its office in New York City. Substantial events giving rise to Plaintiff's claims occurred while Plaintiff was working from Morris County, and Defendant conducts business in New York and New Jersey.

## PARTIES

6. Plaintiff is an individual who was employed by Defendant from March 2022 through May 2026.
7. Defendant is a company that employed Plaintiff and conducted business in New York and New Jersey.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment and Qualifications

8. Plaintiff joined Defendant in March 2022 with 7 years of experience in marketing across the consumer products/retail and consulting industries.
9. Plaintiff was a high-performing employee who received positive feedback regarding her performance, collaboration, leadership, and business contributions from many colleagues.
10. Plaintiff successfully managed both her own responsibilities and significant peer- and senior-level responsibilities beyond her scope, contributing to Defendant's marketing, sales, and culture initiatives.
11. Despite her sustained performance and increasingly impactful workload, Plaintiff never received meaningful career advancement, compensation growth, or recognition consistent with her contributions.

### Sexual Harassment and Report

12. On March 28, 2023, Plaintiff was subjected to sexual harassment by a male director employed by Defendant's parent organization during a company-sponsored event.
13. The individual made inappropriate sexual advances toward Plaintiff and showed Plaintiff sexually explicit content involving a minor (CSAM).
14. Per the organization's stated policy, Plaintiff reported the harassment to Defendant's Human Resources department.
15. Defendant conducted an investigation lasting approximately seven months, throughout which Plaintiff provided continuous investment and labor.
16. Before and throughout the investigation, Plaintiff experienced additional harassment from managers and a peer within her team.
17. Defendant's handling of the investigation, combined with her team members' behavior toward her, caused Plaintiff prolonged and intensifying distress.

### Retaliation Following Protected Activity

18. Following Plaintiff's sexual harassment report, Defendant and its agents subjected Plaintiff to retaliatory treatment.
19. Defendant's retaliatory treatment included further harassment, diminished professional support, lack of meaningful advancement opportunities, bullying, gossip, defamation, and other actions that negatively affected Plaintiff's career, reputation, financial stability, and health.
20. Defendant's implicated agents included:
    i. Multiple managers with vested interests in undermining Plaintiff and her credibility to advance their own standing;
    ii. A colleague with a vested interest in undermining Plaintiff and her credibility to advance their own standing, who had previously expressed interest in Plaintiff's position and who came to resent Plaintiff after Plaintiff declined to continue

performing the colleague's responsibilities and disengaged from their personal relationship;

iii. HR leadership with vested interests in protecting management and their own decision-making, as well as with conflicts of interest, who failed to thoroughly investigate or recuse themselves despite such conflicts, including when HR personnel had directly mentored a manager exploiting and misrepresenting Plaintiff.

21. On January 31, 2024, Plaintiff received a role description document prepared by Marketing leadership that materially misrepresented her qualifications and was used to justify her demotion and the resulting diminution of her position within the organization.
22. The aforementioned document was sent to Plaintiff in error.
23. Per the organization's stated policy, Plaintiff immediately raised concerns regarding the document and the treatment and inaccuracies reflected therein to her manager, as well as others within marketing and HR leadership.
24. Defendant and its agents failed to provide appropriate resolution, instead silencing, concealing, and dismissing Plaintiff's concerns.
25. Within weeks, Plaintiff suffered a seizure and a traumatic brain injury following years of severe and sustained stress, which was compounded by the knowledge that she was being placed into another unfair and untenable position.

**Retaliation for Reporting Retaliation**

26. After Plaintiff raised concerns regarding the role description document, Defendant and its agents again subjected Plaintiff to adverse treatment throughout the ensuing year.
27. Defendant's actions during that year included continued marginalization, exclusion from meaningful resolution processes, removal from high-impact work previously assigned to Plaintiff, and other adverse treatment affecting the terms and conditions of Plaintiff's employment.
28. While on medical leave following that year, Plaintiff again attempted to address the issues she had reported.
29. Plaintiff's complaints were connected to her protected activity and Defendant's response to her harassment and retaliation reports.
30. Plaintiff's efforts were directed toward obtaining fair treatment and addressing unlawful conduct.
31. Rather than meaningfully consider or remedy the issues Plaintiff reported, Defendant again dismissed her concerns, isolated her from sources of support, obstructed formal reporting channels, and otherwise applied coercive pressure to Plaintiff.

**Gender Discrimination, Disability Discrimination, and Hostile Work Environment**

32. Plaintiff is female.
33. Plaintiff has a disability.
34. Plaintiff was qualified for her position and successfully performed the responsibilities of her role, as well as significant responsibilities assigned to others.

35. Plaintiff reported to six different managers and worked on continuously unstable, high-attrition teams over her tenure, undermining the consistency and reliability of performance evaluations.
36. Defendant subjected Plaintiff to adverse treatment in a workplace characterized by gender-based harassment and unequal treatment of women.
37. Plaintiff was subjected to sexual harassment, while Defendant failed to provide an effective and timely resolution.
38. Following Plaintiff's complaints and proactive attempts to resolve issues, multiple leaders failed to give her or her concerns serious consideration. Plaintiff was subjected to continuing gender- and disability-based mistreatment, including characterizations as "difficult," "not strategic," "emotional," "overreacting," "ask(ing) too many questions," and "freaking out," particularly when she raised legitimate concerns. Plaintiff was simultaneously and repeatedly criticized for being "conflict-averse."
39. Plaintiff privately disclosed details regarding her disability to a colleague, who subsequently developed an interest in undermining Plaintiff's position.
40. That colleague, who had a vested interest in Plaintiff's position, spread rumors concerning Plaintiff's disability, competence, and integrity, including to management that later demoted and dismissed Plaintiff.
41. Defendant and its agents' conduct contributed to a hostile work environment that fundamentally altered the terms and conditions of Plaintiff's employment.

**Defamation**

42. During Plaintiff's employment, Defendant and its agents made false and defamatory statements concerning Plaintiff's performance, qualifications, character, conduct, and professional reputation. These statements were communicated to third parties and independently verified to Plaintiff by multiple individuals.
43. In January 2025, an external consultant retained by Defendant independently confirmed that gossip was a significant issue within Defendant's marketing department.
44. False and defamatory statements concerning Plaintiff originated from individuals involved in employment-related feedback and decision-making affecting Plaintiff.
45. These false and defamatory statements damaged Plaintiff's professional reputation, standing within the organization, and future employment opportunities.
46. As a result, Plaintiff suffered significant professional and financial harm and other damages.

**Constructive Discharge and Termination**

47. The cumulative effect of Defendant's conduct created working conditions that became intolerable. Plaintiff repeatedly sought resolution and clarity regarding her employment situation and proposed solutions to issues that Defendant had itself identified and represented as those it intended to address.
48. Plaintiff took medical leave after experiencing significant physical and emotional harm arising from the workplace conditions layered atop significant personal distress.

49. Defendant's continued conduct ultimately left Plaintiff with no reasonable alternative but to separate from her employment.
50. Defendant terminated Plaintiff's employment before her planned resignation became effective.

## CAUSES OF ACTION

### First Cause of Action: Sex Discrimination and Sexual Harassment

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully set forth herein.
52. Plaintiff is female and was subjected to discrimination and harassment because of her sex and gender.
53. Defendant subjected Plaintiff to sexual harassment and other gender-based adverse treatment and permitted a gender-based hostile work environment to persist.
54. Defendant knew or should have known of the harassment and gender-based mistreatment and failed to take reasonable and effective steps to prevent, investigate, and correct the conduct.
55. Defendant's conduct adversely affected the terms and conditions of Plaintiff's employment and caused her professional, financial, and other damages.
56. Defendant's conduct violated applicable federal and state laws prohibiting discrimination and harassment on the basis of sex and gender.

### Second Cause of Action: Retaliation

57. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.
58. Plaintiff engaged in protected activity by reporting sexual harassment, opposing sex- and gender-based discrimination and harassment, and raising concerns regarding conduct she reasonably believed to be unlawful.
59. Plaintiff further engaged in protected activity by repeatedly reporting retaliation and other adverse treatment arising from her protected activity.
60. Defendant and its agents knew of Plaintiff's protected activity.
61. Defendant retaliated against Plaintiff because of her protected activity.
62. Defendant's retaliatory conduct included, but was not limited to, marginalization, exclusion from meaningful resolution processes, removal from impactful work, diminished role scope, adverse management actions, interference with reporting and resolution processes, pressure to remain silent, constructive discharge, and termination.
63. Defendant's retaliation caused Plaintiff substantial professional, financial, and other damages.

### Third Cause of Action: Hostile Work Environment

64. Plaintiff repeats and realleges paragraphs 1 through 63 as if fully set forth herein.

65. Defendant and its agents subjected Plaintiff to unwelcome sex- and gender-based harassment and retaliatory conduct that was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a hostile work environment.
66. The hostile work environment included sexual harassment, gender-based stereotyping and criticism, retaliation for reporting unlawful conduct, and continuing adverse treatment after Plaintiff raised protected concerns.
67. Defendant knew or should have known of the unlawful conduct and failed to take reasonable and effective steps to prevent and correct it.
68. As a direct and proximate result of Defendant's conduct, Plaintiff suffered professional, financial, physical, emotional, and other damages.

**Fourth Cause of Action: Defamation**

69. Plaintiff repeats and realleges paragraphs 1 through 68 as if fully set forth herein.
70. Defendant and/or its agents made and communicated false and defamatory statements concerning Plaintiff's performance, qualifications, character, conduct, competence, integrity, and professional reputation.
71. The statements were communicated to third parties, including individuals involved in employment-related decision-making affecting Plaintiff.
72. The statements were false, concerned Plaintiff, and were made under circumstances giving rise to liability for defamation.
73. The statements injured Plaintiff's reputation and professional standing and caused, among other harm, damage to her employment prospects and financial interests.
74. As a direct and proximate result of the defamatory statements, Plaintiff suffered substantial damages.

**Fifth Cause of Action: Coercive and Retaliatory Conduct**

75. Plaintiff repeats and realleges paragraphs 1 through 74 as if fully set forth herein.
76. Plaintiff presented evidence and complaints concerning retaliation and other unlawful treatment to Defendant.
77. Rather than meaningfully address Plaintiff's evidence, Defendant and its agents dismissed, minimized, or refused to acknowledge evidence supporting Plaintiff's complaints.
78. Shortly after Plaintiff raised evidence of retaliation and proactively communicated her use of standard employment benefits, Defendant reminded Plaintiff of the potential denial of those benefits.
79. Defendant and its senior agents had cultivated personal relationships with Plaintiff and leveraged those relationships and positions of trust in connection with Plaintiff's employment and complaints.
80. Defendant's conduct was intended, at least in part, to pressure Plaintiff into abandoning, limiting, or remaining silent about her complaints and protected activity.
81. Defendant's conduct contributed to the adverse treatment and harm Plaintiff suffered.

**Sixth Cause of Action: FMLA Interference**

82. Plaintiff repeats and realleges paragraphs 1 through 81 as if fully set forth herein.
83. Plaintiff was on protected medical leave during the relevant period and was exercising rights protected by the Family and Medical Leave Act ("FMLA").
84. Plaintiff was entitled to the protections and benefits of FMLA leave, including freedom from interference with, restraint of, or discouragement of her exercise of FMLA rights.
85. Shortly after Plaintiff's FMLA leave began, Defendant and its agents began diminishing Plaintiff's professional contributions and portraying her role as less impactful than it had been, including by minimizing or disregarding significant work and responsibilities to which Plaintiff had been integral.
86. While Plaintiff was on FMLA leave, Defendant and its agents made requests of Plaintiff outside of her stated availability.
87. Defendant knew that Plaintiff was on FMLA-protected leave when it engaged in the aforementioned conduct.
88. Defendant's conduct interfered with, restrained, and/or discouraged Plaintiff's exercise of her rights under the FMLA and undermined the protections to which she was entitled while on protected leave.
89. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff suffered professional, financial, and other damages.

**Seventh Cause of Action: Constructive Discharge**

90. Plaintiff repeats and realleges paragraphs 1 through 89 as if fully set forth herein.
91. Defendant repeatedly placed Plaintiff under the supervision of managers with vested interests in undermining her professional standing to advance their own interests.
92. Defendant repeatedly promoted or otherwise rewarded those same managers despite their conduct toward Plaintiff and her colleagues.
93. Defendant continued to disregard Plaintiff's complaints, diminish her professional standing, interfere with meaningful resolution processes, and subject her to continuing adverse treatment.
94. Plaintiff repeatedly sought resolution, clarity regarding her employment situation, and meaningful remedies for issues Defendant had itself identified or represented it intended to address.
95. Defendant incorrectly accused Plaintiff of failing to provide adequate documentation during her transition from short-term to long-term disability leave, despite Plaintiff having timely taken steps to provide the required documentation.
96. The cumulative effect of Defendant's conduct created working conditions that became intolerable and would have compelled a reasonable person in Plaintiff's position to leave.
97. As a result of these intolerable working conditions, Plaintiff determined that she could no longer remain in her position and provided notice of her planned resignation.
98. Before Plaintiff's resignation became effective, Defendant terminated her employment.
99. Defendant's conduct effectively forced Plaintiff's separation from employment and constituted constructive discharge, and Defendant's subsequent termination further compounded the harm caused by its conduct

100. As a direct and proximate result of Defendant's conduct, Plaintiff suffered substantial professional, financial, and other damages.

## DAMAGES

101. Lost wages and compensation;
102. Loss of employment benefits and other employment-related compensation;
103. Loss of professional opportunities, career advancement, and future earning capacity;
104. Harm to Plaintiff's professional reputation and standing;
105. Emotional distress, humiliation, and mental anguish;
106. Physical harm and related losses;
107. Out-of-pocket and other consequential expenses; and
108. Such other damages, as may be established through discovery and proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Award compensatory damages;
B. Award back pay and front pay;
C. Award damages for emotional distress and reputational harm;
D. Award punitive damages where permitted;
E. Award costs and any other available relief;
F. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*Rebecca Bednarz*

Rebecca Bednarz
Plaintiff Pro Se

17 Pine Court
Bedminster, NJ 07921
August 17, 2026